Good morning, your honors. May it please the court. I'm Daniel Kaplan. I represent the appellant Michael Jackson. I'm going to be watching the clock and attempt to save about two minutes for my rebuttal. It's been established since the 1932 decision in Powell v. Alabama that the right to the assistance of counsel is the right to the effective assistance of counsel. In 1968, Congress extended that right to the assistance of counsel to Native Americans, Indians in federal law terms, who are being prosecuted in tribal court. Mr. Jackson, my client, was prosecuted in the Gila River Indian Community Court in the year 2008. He was convicted and eventually was sentenced to and served a three-year sentence. He was represented by a non-lawyer advocate whose performance was so poor that in the entire course of this litigation, no attempt has been made to defend it or to suggest that it reached a level, a minimal level of effective assistance of counsel. The question presented today is, did this proceeding violate Mr. Jackson's right to the assistance of counsel guaranteed in that 1968 law, the Indian Civil Rights Act, under either the assistance of counsel clause of that law or the due process clause of that law? The answer to that question is yes. As this Court has observed in several cases ---- I mean, he actually had more going in than the statute otherwise guarantees him, because the tribe, as I understand it, was going to afford him counsel at no expense, is that right? There is a defender office in the Gila River tribe, and there were counsel, actual State barred counsel, who were prepared to represent him, and he chose to retain instead a non-lawyer advocate. Right. So why doesn't that just take us out of clause 6 right off the bat? I don't understand that. Because of the Supreme Court decision in Coyler, this is Coyler v. Sullivan, 1980 case that's discussed at length in the briefs. And in Coyler, the Supreme Court said that under the effective assistance of counsel guarantee, it applies to retained counsel as well as to appointed counsel. Right, but it applies to counsel. And this gentleman, I can't remember his name now, was not a lawyer. That's correct. To me, I just stop right there and say this clause doesn't even govern your client's situation. Well, and that's essentially the rationale of the magistrate judge and the district judge. The reason that's wrong is if you look at the language, for example, not only of Coyler but of Strickland, of course, the key effective assistance case, the point is made that the right to the assistance of counsel is about guaranteeing the defendant a fundamentally fair trial. It's not there for its own sake. It's there for the sake of guaranteeing a fundamentally fair trial. So when looking at whether that right has been provided, the question is not does this person represent a certain type of counsel, it is was this person functioning as the counsel or representation. What about a forensic case? Is the person who chooses to represent himself instead of having a member of the bar, is he entitled to effective representation? I don't know the answer to that. I suspect the answer is no. However, I would point out. Well, if you take a nonlawyer to represent you, and because you can't really do that in Federal court, but if you choose to have a nonlawyer represent you in an entity that allows you to do that, what is it that says when you choose not to have counsel in one sense of the word, meaning a lawyer, a member of the bar, what is it that says when you choose not to have a lawyer that you're entitled to effective rules when you apply to a lawyer? The fact is you can be represented by a non-bar-admitted attorney in Federal court and in most State courts, and it's under the student practice rules that many of those courts operate under. I cited cases in the briefing that involved students, law students, who were admitted to practice under student practice rules, and the client complained that this person who was not actually an attorney but just someone in training to be an attorney rendered ineffective assistance. Now, in those cases, we cited a Federal case and a State case, the courts did not say, well, we're just going to throw the effective assistance out the window because this person is not a State-barred counsel. They said, was this performance adequate to reach the level of effective assistance that is guaranteed? Because, again, the focus is on whether a fundamentally fair trial was provided by effective assistance. Perhaps self-representation simply doesn't fall into that category. But what Judge Watford is talking about is when a defendant makes a choice, and here it wasn't just that he used a layperson, he used the former chief judge of the court, right? Yes, although he was essentially a layperson. Yes, but what I'm saying is he may have had tribal historical reasons, cultural reasons to think I'm better off with somebody who's of my people, who understands the judge because he worked with the judge, understands the court system. And once you make that choice, it's, as Judge Reinhart said, like the choice to represent yourself. As long as it's a knowing and intelligent choice, you live with the consequences. But you can't – if the court had tried to force on him a defense counsel and not let him use the layperson and he had been convicted, I think he would have had a pretty good claim that his rights were violated there. Well, in Coyler, the Supreme Court case I just mentioned, this is a quote. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. And the point is that the Supreme Court made in Coyler is that, again, as they said in Strickland, the right is to guarantee that that type of representation, which is adequate to ensure a fundamentally fair trial, was provided. And if the defendant makes a choice either to accept non-attorney law students who are allowed to practice or to accept representation, to choose representation by a non-attorney lay advocate admitted to practice in a tribal court, they are not stuck with the ineffective representation that they may end up with. They are not stuck with that because that's what the Supreme Court says. Those constitutional rights are the conduit of the Indian Civil Rights Act as this Court said in Red Fox, transmits them to tribal defendants in tribal court. And so the idea that they're stuck with what they get simply has never been accepted in any case law I can find or any of the case law that I cited that deals with directly analogous circumstances, where it's not an attorney, but it is representation, and it was accepted or chosen by the defendant. I guess the your use of the student representation cases seems a little bit off because the only situations I'm familiar with where that happens is under the supervision of a licensed lawyer. And that's the way it's reflected in the cases I cited. So there's supervision of an attorney, but in assessing whether effective assistance was denied, the courts we've cited have not just looked to what the supervising attorney did. They've said, well, that student got up, he made the opening argument. There's a challenge to the adequacy of the opening argument, but we looked at it and we think that opening argument met the Strickland standard. So that standard has actually been applied to non-lawyer students who are practicing under those types of rules. I would like to say at the balance of my time. Sotomayor. Good morning, Your Honors. May it please the Court. I'm Rebecca Hall. I'm an attorney representing Mr. Tracy in the Gila River Indian Community Court. And for clarification of the record, I may also refer to the respondents or the appellees as the Gila River Indian Community or the community. The question on review here is whether Jackson's conviction is in accordance with the Indian Civil Rights Act. The plain language of the Indian Civil Rights Act, comedy, and the federal policy of tribal self-determination are reasons this court should uphold the district court's dismissal of Jackson's habeas petition. And further, as noted in the district court documents, Jackson has not exhausted all of his available tribal court remedies as he filed his habeas petition in federal court before he was sentenced and then never appealed in the Gila River Indian Community's Court of Appeals. So he filed his writ on March the 8th of 2011, and then approximately two months later, he was sentenced in the Gila River Indian Community Court. However, he never appealed that sentence before the tribal court's appeal. The Supreme Court's policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims. While exhaustion is... Unexhausted. I thought we did have a ruling by the tribal court rejecting the very claim that he's pressing now, don't we? Your Honor, that's correct. Why was it not exhausted then? Well, there's still an option for him to make an appeal before the tribal court. The community council has recently enacted a new appellate code and procedure. They have recently appointed two new appellate judges. Those appellate judges will be sworn in before the community council, either at the next council session or the following council session, and there are timelines within that to make a decision. But he wasn't appealing a sentence. He was appealing a conviction which had already been ruled on by the court of appeals. Yes, that's correct, Your Honor. While we're off on these sort of little side issues, at least not the basic issue, one thing I'd like to ask. I thought at the time of his conviction that it was a one-year maximum on the sentence by the tribal courts. Your Honor, that is correct. It's one year of imprisonment per offense. However, the individual can receive concurrent sentences, and they can be vernacular stacked. So, he could have one year per criminal offense up to, I believe in this instance, it was three years. However, with the 2010 amendment to the Indian Civil Rights Act, that has effectively foreclosed that unless the individual has the five rights that are enumerated in 25 U.S.C. 1302C. He has to be provided with those rights in order to receive a sentence greater than one year, and then the maximum that a tribe could provide an individual would be nine years per criminal proceeding. Thank you. Here, though, Jackson attempts to fashion a new standard for tribal court advocates that's not based on the right to counsel under the Indian Civil Rights Act. The Indian Civil Rights Act provides at his own defense, excuse me, at his own expense to have the assistance of counsel for his defense. This is not parallel to the Sixth Amendment provision. Jackson, however, argues that where the procedure is parallel, then the Federal constitutional standards should apply, even though the statutes are not parallel. Well, let me ask you this. I read subsection 6, at least as it existed prior to 2010, as basically enacting or guaranteeing the defendant kind of a pre-Gideon type right that existed in state court. So but even in that regime that we had pre-Gideon, there was still the defendant still had a due process right to come in and say, look, this lawyer that I had was so bad that it basically made the entire trial a farce, and I'm entitled to relief under the due process clause. Why wouldn't we adopt a similar kind of analysis in this case? Because an overview of the legislative history indicates that when they were initially enacting the Indian Civil Rights Act, the Senate Judiciary Committee was concerned about the imposition of criminal procedures on tribes, which ultimately resulted in them modifying certain requirements that conflicted with tribal interests and practices. So the legislative history indicates that Congress clearly understood that they were departing from the right-to-counsel standard under the U.S. Constitution. Roberts, that's fine. That takes care of 6, but we do have 8 as well, which basically imports into this realm standard protections of due process. Due process being a fair trial? Yeah. And I guess what I'm saying is that you're you maybe you're fine under 6, but 6 just mirrors the pre-Gideon regime we had in state court. And even in that regime, we had kind of a due process floor that was established. And I don't see why why why isn't the defendant entitled to that due process floor in this proceeding? Well, due process would be a fair trial. The effective assistance of counsel would come in under the Sixth Amendment right. I what I'm asking is, is it fair for us to say to look at this lay advocate's representation and say it was so bad, forget about whether it met the Strickland  It was not in any sense a fair trial. And why couldn't he get relief under 8, subsection 8, instead of subsection 6? There was a ruling by the tribal court that the the the trial was a fair that the defendant received a fair trial. And it was not a farce and mockery. It was not so egregious. It does not shock the conscious that the standard that used to be used for the due process when it was thought that the effective assistance of counsel was under the due process clause before the determination that effective assistance of counsel was under the Sixth Amendment. I mean, am I understanding the facts right that this lay advocate failed to introduce DNA evidence that would have exonerated his client? Your Honor, that is correct. However, there was testimony from the victim as well as another direct testimony from another witness. Well, I don't know what it means to say would have exonerated his client. I mean, the DNA doesn't say whether something happened or not. There may have been something there that would have indicated didn't match his DNA. I would hardly think that would exonerate somebody. That's correct. The testimony of the victim must have been credible enough for the judge to find the defendant guilty. Going back to this application of the attorney standard in Strickland to a tribal court advocate, that's troublesome for a couple of reasons, because the attorney standard in the effective assistance of counsel under Strickland was developed under the Sixth Amendment, which, again, is not applicable to Indian tribes and is not parallel to the right of the Indian Civil Rights Act. Under the amendment? Isn't that the case now? Your Honor, that is correct. It's under the 2010 amendment, but that would not apply. It can't be so troublesome. But that would not apply to this case. I know. But you were saying it would be troublesome if it did. But had it occurred now, it would have been. It can't be all that troublesome. The 2010 amendment actually creates a dual track. It respects tribal sovereignty for those cases that are less than one year of imprisonment. But if you're going to attempt to sentence an individual to more than one year, then there are those five protections that come into play. And, again, it's kind of a dual track, if you will, because the misdemeanor or the less than one years, that requirement for the effective assistance of counsel does not apply to those proceedings as it does when it's greater than one year. Your Honor. And also in Strickland, the proper measure of the attorney performance is reasonableness under prevailing professional norms. What is reasonableness under prevailing professional norms for a tribal court advocate that is not parallel because they may not have gone to college, they may not have a law degree, and they may not be licensed by any jurisdiction? So, again, what would be the reasonableness under prevailing professional norms, and really wouldn't it be up to a tribe, wouldn't a tribe be in the best place to answer under tribal sovereignty what that standard is? In enacting the Indian civil rights, Congress acted to impose certain restrictions upon tribal governments that were similar but not identical to those in the Bill of Rights. Congress also intended to promote the well-established federal policy of furthering Indian self-government. The commitment to the goal of tribal self-determination is demonstrated by the provisions of the Indian Civil Rights Act, and rather than providing wholesale extension of constitutional requirements to tribal governments, as had been initially proposed, Congress selectively incorporated and in some instances modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments. And in Santa Clara Pueblo v. Martinez, the Supreme Court cautioned that where Congress seeks to promote dual objectives in a single statute, the courts must be more than unusually hesitant to infer from its silence a cause of action that while serving one legislative purpose, will disserve the other. And the Court noted that the Congress's authority over Indian matters is adjusting relations between and among tribes is correspondingly restrained. So, Your Honors, out of respect for sovereignty of the community and under the principles of comity, this Court should uphold the district court's decision. It should decline reaching or analyzing any Strickland standard against a tribal court advocate, because the Indian Civil Rights Act provision is not the same and it's not parallel to the Sixth Amendment. And further, if the Court does not want to dismiss this based on the Indian Civil Rights Act plain language or comity or tribal sovereignty, the Court can dismiss and remand for failure to exhaust tribal court remedies. Thank you, counsel. The exhaustion argument was raised below in the district court by the community and was waived on appeal. They have not raised it on appeal. This is the first time on appeal we're hearing it. It's waived. It should not be addressed. And another point, of course, is that there was an appeal raising this exact issue by my client in the tribal appellate court, and that appeal was denied by the tribal appellate court. So the idea that this hasn't been appealed within the tribal system is simply false. The idea that there's a new appeal court system now, several years later, four or five years later, is not of much use to my client at this point. A very key point that I want to stress, the Congress that passed the Indian Civil Rights Act, the Supreme Court in the Santa Clara case that she just referred to said that when Congress passed this law, they found that the most serious abuses of tribal power occurred in the administration of criminal justice. Now, since that's the case, you're looking at this statute and saying, did this clause, effective assistance of counsel as a guarantee, was it meant to have any real tangible effect? Well, Congress knew that it's very, very rare in tribal courts then. It's still very, very rare 42 years later for tribal criminal defendants to have actual state-barred attorneys representing them. If they didn't think there was going to be any reasonably effective assistance guaranteed by that clause, that was really excess verbiage. And, of course, the Court should not read the statute in such a way as to nullify it and directly countervene the most key and essential purpose of the statute that was in the mind of that Congress that enacted it. Your Honor, Judge Watford referred to the farce or mockery standard. At the absolute floor, certainly, that standard should be applied. And I — I was surprised that you did not argue that under the rubric of due process. Well — And I'm trying to figure out why. You think that the guy did a good enough job that it would get over that hurdle? Absolutely not. This was a farce and a mockery. The reason I didn't use cases that use that language is I cited Brubaker, which said reasonably likely to render and rendering reasonably effective assistance. This Court's decision, Brubaker. And I cited Cooper, which came later after a bunch of farce and mockery cases. And Cooper says, don't take those farce and mockery cases literally. That's not really the standard. The standard is still Brubaker. So I was more happy with the Brubaker articulation than the farce and mockery articulation. And I felt the reason I cited Cooper was to show that those farce and mockery cases shouldn't govern the due process standard, but it would fail even the farce or mockery standard. We can argue about the meaning of exonerate. But the fact is that was the testimony was that there was so much semen on the blanket, it was like peeing on her, and the DNA was tested, and semen was found, and DNA was analyzed, and it didn't match my client. So perhaps somebody did that, but it certainly seems to go in the direction of exonerating my client based on that testimony at the trial. If there are no further questions. Thank you, counsel.
judges: Lasnik, Reinhardt, Watford